UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>JESUS SEGURA,<br><br>Defendant. | Case No. 4:17-cv-05335-YGR (KAW)<br><br>**REPORT AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT; ORDER DISCHARGING 3/6/18 ORDER TO SHOW CAUSE**<br><br>Re: Dkt. No. 21 |

On February 9, 2018, Plaintiff J & J Sports Productions, Inc. filed a motion for default judgment against Defendant Jesus Segura for the unauthorized exhibition of a pay-per-view program. Thereafter, the motion was referred to the undersigned for report and recommendation.

On April 5, 2018, the Court held a hearing, and, for the reasons set forth below, RECOMMENDS that Plaintiff's motion for default judgment be GRANTED. Additionally, the undersigned DISCHARGES the March 6, 2018 order to show cause.

## I. BACKGROUND

Plaintiff J & J Sports Productions, Inc. is an international distributor of sports and entertainment programming. By contract, Plaintiff purchased the domestic commercial exhibition rights to broadcast *Saul Alvarez v. Liam Smith WBO World Super Welterweight Championship Fight Program* (the "Program"), which was telecast nationwide on Saturday, September 17, 2016. (Compl., Dkt. No. 1 ¶ 14; Decl. of Joseph M. Gagliardi, "Gagliardi Decl.," Dkt. No. 21-4 ¶ 3). The Program included the main event (between Alvarez (a/k/a "Canelo") and Smith) along with undercard bouts, televised replay, and color commentary. (Compl. ¶ 14; Gagliardi Decl. ¶ 7.) Pursuant to the contract granting Plaintiff its distribution rights, Plaintiff entered into sub-licensing agreements with commercial establishments to permit public exhibition of the Program. (Compl. ¶

1  15; Gagliardi Decl. ¶ 3.) Without Plaintiff's authorization, Defendant unlawfully intercepted,

2  received and exhibited the Program at his commercial establishment, La Selva Taqueria, located at

3  1049 23rd Street, Richmond, California 94804. (Compl. ¶ 17; Declaration of Affiant John Poblete,

4  "Poblete Decl.," Dkt. No. 21-3). Specifically, on September 17, 2016, investigator John Poblete

5  personally observed the unlawful exhibition of the Program at La Selva Taqueria. (Poblete Decl. at

6  1.)

7  On September 14, 2017, Plaintiff filed the complaint alleging four causes of action in

8  connection with the unlawful exhibition of the Program. Defendant was served on December 7,

9  2017. (Dkt. No. 17). Defendant did not appear in this action.

10  On January 15, 2018, Plaintiff requested entry of default (Dkt. No. 18), which the Clerk of

11  Court entered on January 16, 2018. (Dkt. No. 19). On February 9, 2018, Plaintiff filed the instant

12  motion for default judgment, which was referred to the undersigned for report and

13  recommendation. (Mot., Dkt. No. 21; Dkt. No. 22). On February 20, 2018, the undersigned

14  ordered Plaintiff to file a supplemental brief not to exceed 8 pages, plus any supporting

15  declaration, by the reply filing deadline if it planned to seek recovery of attorneys' fees and costs.

16  (Dkt. No. 25.) Plaintiff did not file the supplemental declaration or the proposed order, so the

17  undersigned issued an order to show cause on March 6, 2018. (Dkt. No. 26.)

18  On March 16, 2018, Plaintiff filed the supplemental brief, supporting declaration, and

19  proposed order. (Dkt. No. 28.) Also on March 16, 2018, Plaintiff timely responded to the order to

20  show cause. (Dkt. No. 27.)

21  On April 5, 2018, the undersigned held a hearing at which David Victor Marcolini

22  appeared on behalf of Plaintiff after counsel Thomas P. Riley filed a notice of appearance for him

23  that morning. (Dkt. No. 29.) Mr. Marcolini, however, is not admitted to practice in the Northern

24  District of California despite having made two prior appearances in the district. *See* Minute Entry,

25  *United States v. Villalobos*, Case No. 11-cr-0271-MEJ (N.D. Cal. Jan. 31, 2012), ECF No. 7; *see*

26  *also* Minute Entry, *J & J Sports Prods., Inc. v. Pittsburg Lodge No. 1475, Loyal Order of Moose,*

27  *Inc.*, Case No. 14-cv-05129-VC (N.D. Cal. Apr. 14, 2016), ECF No. 69. Moreover, Mr. Marcolini

28  was woefully unprepared to answer even the most basic questions regarding the motion for default

2

judgment. While the undersigned recognizes that Mr. Riley's office is in Southern California, he could have availed himself of the Court's procedures to appear telephonically instead of sending an attorney who is neither admitted to practice in the Northern District nor knowledgeable about the case at hand.

On April 6, 2018, presumably based on Mr. Marcolini's recounting of the questions he was unable to answer at the hearing, Mr. Riley filed an amended declaration of John Polete. (Dkt. No. 30.) The declaration appeared identical to the one filed in conjunction with the motion for default judgment, but with several photos of the interior and exterior of what appears to be a restaurant attached thereto. *Id.* The declaration, however, failed to authenticate the attached photos, so the undersigned was unable to determine where they were taken or what evidence they showed. (Dkt. No. 32.) As a result, the amended declaration was stricken, but the undersigned permitted Plaintiff to file a supplemental declaration that authenticates any photographs. *Id.*

On April 16, 2018, Plaintiff submitted another declaration from John Poblete, which authenticated the interior and exterior photographs as being taken at La Selva Taqueria on Sunday, September 18, 2016. (2d. Decl. of John Poblete, "2d. Poblete Decl.," Dkt. No. 33 ¶¶ 3-4.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) permits a court to enter a final judgment in a case following a defendant's default. *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995,999 (N.D.Cal 2001). Whether to enter a judgment lies within the court's discretion. Id. At 999 (citing *Draper v. Coombs*, 792 F.2d 915,924-925 (9th Cir. 1986)).

Before assessing the merits of a default judgment, a court must confirm that it has subject matter jurisdiction over the case and personal jurisdiction over the parties, as well as ensure the adequacy of service on the defendant. See *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). If the court finds these elements satisfied, it turns to the following factors ("the Eitel factors") to determine whether it should grant a default judgment:
> (1) the possibility of prejudice to the plaintiff, (2) the merits of Plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,](5) the possibility of a dispute concerning material facts[,](6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring a decision on the merits.

3

*Eitel v. McCool*, 782 F. 2d 1470, 1471-72 (9th Cir. 1986) (citation omitted).

Upon entry of default, all factual allegations within the complaint are accepted as true, except those allegations relating to the amount of damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). Where a default judgment is granted, the scope of relief "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

## III. DISCUSSION

### A. Jurisdiction and Service of Process

In considering whether to enter default judgment, a district court must first determine whether it has jurisdiction over the subject matter and the parties to the case. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("When the entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties.")

#### i. Subject Matter Jurisdiction

This Court has jurisdiction over this action under 28 U.S.C. §1331, which vests district courts with original jurisdiction over piracy matters. 47 U.S.C. §§ 553,605. This Court exercises supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a); *see G & G Closed Circuit Events, LLC v. Nguyen*, 2010 WL 3749284, *3 (N.D. Cal. Sept. 23, 2010).

#### ii. Personal Jurisdiction

Defendant is the owner and operator of La Selva Taqueria, a California establishment operating in Richmond, California. (Compl. ¶ 7.) This is confirmed by California public records. (Compl. ¶ 8.) As such the Court may exercise general personal jurisdiction over him. *See McComb v. Vejar*, 2014 WL 5494017, *4 (C.D. Cal. Oct. 28, 2014). In addition, Plaintiff claims arise out of Defendant's specific contacts with the state such that the Court also may exercise specific personal jurisdiction. *See Id.*

#### iii. Venue

Venue is proper, because the Defendant and his establishment are both located in the district. (Compl. ¶ 4.)

### iv. Service of Process

Defendant was served via substituted service at his residence in San Pablo, California, on a person of suitable age and discretion. (Dkt. No. 17). This is proper service. Fed. R. Civ. P. 4(e)(2)(B). A sworn proof of service constitutes "prima facie evidence of valid service which can be overcome only by strong and convincing evidence." *Securities & Exchange Comm'n v. Internet Solutions for Business, Inc.*, 509 F.3d 1161, 1166 (9th Cir. 2007) (emphasis added). Accordingly, service was proper.

### B. Application to the Case at Bar

Since the Court has jurisdiction in this matter, this Court must turn to the *Eitel* factors to determine whether the entering of a default judgment is appropriate in this matter.

### i. Possibility of Prejudice to Plaintiff

Under the first factor, the Court must determine whether Plaintiff will be prejudiced if the Court denies its motion for default judgment. *Eitel*, 782 F.2d at 1471-72. Here, Plaintiff will be prejudiced if default is not entered because it has sustained an injury as a result of the actions of Defendant and without default judgment, Plaintiff would be left without a judicial resolution to its claims and without other recourse for recovery. *See Bay Area Painters and Tapers Pension Trust Fund v. Ibarra*, 2011 WL 6056462 at *4 (N.D.Cal. Nov. 1, 2011).

Accordingly, this factor weighs in favor of default judgment.

### ii. Merits of Plaintiff's Substantive Claim and the Sufficiency of the Complaint

The second and third *Eitel* factors focus on the merits of Plaintiff's substantive claims and the sufficiency of the Complaint. *Eitel*, 782 F.2d at 1471-72. In order for these factors to weigh in Plaintiff's favor, Plaintiff must assert claims upon which it may recover. See *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002).

1. <u>47 U.S.C. § 605(a)</u>

Plaintiff must demonstrate that it has a proprietary interest in the Program and that Defendant unlawfully intercepted, received, published, divulged, displayed, and/or exhibited the Program at La Selva Taqueria without Plaintiff's authorization. *See* 47 U.S.C. § 605(a); 47 U.S.C.

§ 553(a).[1] Section 605(a) provides, in relevant part, "No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person." 47 U.S.C. § 605(a). Although § 605 did not originally address television signal piracy, amendments extended the statute's "reach to the unauthorized reception or interception of television programming." *J & J Sports Prods., Inc. v. Thang*, 2018 WL 623497, at *3 (E.D. Cal. Jan. 30, 2018) (quoting *DirecTV, Inc. v. Webb*, 545 F.3d 837, 843 (9th Cir. 2008)). Moreover, "§ 605 is a strict liability statute, so the willfulness of a defendant's violation is irrelevant to determining liability." *J & J Sports Prods., Inc. v. Thang*, 2018 WL 623497, at *3 (E.D. Cal. Jan. 30, 2018). Circumstantial evidence of signal piracy is sufficient to establish a violation of § 605, so a plaintiff need not show the direct factual evidence of how signal piracy occurred in a specific case. *Webb*, 545 F.3d at 844 ("Signal piracy is by its nature a surreptitious venture and direct evidence of actual interception may understandably be hard to come by."). Here, Plaintiff alleges that it had exclusive nationwide commercial distribution rights, that Defendant was not authorized to receive or exhibit the Program, and that Defendant exhibited the program for financial gain. (Compl. ¶¶13-22.) Plaintiff's complaint does not specifically allege that a satellite dish was utilized, but he does generally allege a violation of § 605, which is the unlawful exhibition of a satellite broadcast. (Compl. ¶¶ 19-20; *Webb*, 545 F.3d at 844.) The private investigator did not note whether the Program was transmitted via a satellite dish or via a cable box. (Poblente Decl. at 1.) "Because Plaintiff did not allege that Defendant intercepted a satellite transmission in its Complaint, it is not a factual allegation that can be taken as true." *J&J Sports Prods., Inc. v. Sergura*, 2014 WL 1618577, at *4 (N.D. Cal. Apr. 21, 2014). By way of supplemental declaration, however, Plaintiff provided authenticated photos of multiple satellite dishes affixed to the roof of the restaurant, which were taken by the private investigator the day after the Program was broadcast. (2d. Poblete Decl.¶ 4, Exs. E & F.)

Accordingly, Plaintiff has sufficiently stated a basis for a claim under § 605.

---

[1] Plaintiff may only recover under one section, such that the undersigned will only address why judgment and damages are appropriate under 47 U.S.C. § 605. (*See* Mot. at 5.)

6

2. <u>Conversion Claim</u>

To prevail on the conversion claim, Plaintiff must demonstrate ownership or right to possession of property, wrongful disposition of the property right by Defendant, and damages. *G.S. Rasmussen & Assoc. v. Kalitta Flying Serv.*, 958 F.2d 896, 906 (9th Cir. 1992). Plaintiff has properly alleged that it had ownership over the nationwide distribution rights to the Program, it was unlawfully intercepted or otherwise exhibited by Defendant, and that Plaintiff sustained monetary damages based on the denial of the license fee to which it would have otherwise been entitled. (Compl. ¶¶ 28-31.)

Accordingly, Plaintiff properly alleges a conversion claim.

### iii. Sum of Money at Stake

The fourth *Eitel* factor assesses the reasonableness of the potential award if a default judgment is entered. In making this assessment, the Court must take into account the amount of money at stake in relation to the seriousness of Defendant's conduct. *Eitel*, 782 F.2d at 1471. If the sum of money at issue is reasonably proportionate to the harm caused by Defendant's actions, properly documented, and contractually justified, then default judgment is warranted. *Bd. of Trs. of Cal. Metal Trades v. Pitchometer Propeller*, 1997 WL 797922, at *2 (N.D. Cal. Dec. 15, 1997). A default judgment is only disfavored when a large amount of money is involved or is unreasonable in light of Defendant's actions. *Truong Giang Corp. v. Twinstar Tea Corp.*, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007). In determining if the amount at stake is reasonable, the Court may consider Plaintiff's declarations, calculations, and other documentation of damages. *Id*.

Here, Plaintiff seeks judgment against Defendant in the amount of $5,400 in statutory damages and $27,000 in "enhanced" statutory damages, which are reasonable as they are within the statutory limits. *See e.g.* 47 U.S.C. §§ 605(e)(3)(C)(i)(II) and (e)(3)(C)(ii). The amount Plaintiff seeks for its conversion count is the value of the property at the time of its conversion. Because Plaintiff is an aggrieved party under § 605, Plaintiff is entitled to the damages permissible by statute, and thus this factor weighs in favor of default judgment.

///

#### iv. Possibility of a Material Factual Dispute

The fifth *Eitel* factor examines the likelihood of dispute between the parties regarding the material facts surrounding the case. *Eitel*, 782 F.2d at 1471-72. Upon defaulting, the defendant is "deemed to have admitted all well-pleaded factual allegations" in the complaint. *DirecTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 851 (9th Cir. 2007) (citations omitted). Here, Plaintiff seeks to recover statutory damages in connection the unlawfully exhibition of the Program on two televisions, including a 70-plus inch projector screen. (Mot. at 11.) While there are multiple methods of how the Program could be unlawfully obtained, the photographic evidence suggests it was via satellite dish. (2d. Poblete Decl.¶ 4, Exs. E & F.) Even so, either cable or satellite would have been unlawful without paying the commercial fee of $1,800, such that the method itself is not a material factual dispute. *See J & J Sports Prods., Inc. v. Marcaida,* 2011 WL 2149923, *2 (N.D.Cal. May 31, 2011). Thus, there is little likelihood of a dispute concerning the material facts in support of Plaintiff's complaint, such that this factor weighs in favor of default judgment.

#### v. Whether Default Was the Result of Excusable Neglect

The sixth *Eitel* factor examines whether any interested party's failure to respond to Plaintiff's allegations was the result of excusable neglect. *Eitel*, 782 F.2d at 1471-72. As set forth above, Defendant was served at his residence and has not appeared. Thus, there is nothing in the record suggesting that any individual's failure to appear and litigate this matter is based on excusable neglect. *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) (default after proper service was not excusable neglect). Thus, this factor weighs in favor of granting default judgment.

#### vi. Strong Public Policy Favoring Decisions on the Merits

The final *Eitel* factor examines whether the policy of deciding a case based on the merits precludes entry of default judgment. *Eitel*, 782 F.2d at 1471-72.

Notwithstanding, after an examination of these facts in the aggregate, the undersigned finds that *Eitel* factors one through six outweigh the Federal Rules of Civil Procedure's preference for a decision on the merits, thereby rendering the entry of default judgment proper.

///

**IV. RELIEF SOUGHT**

After entry of default, well-pleaded factual allegations in the complaint are taken as true, except as to the amount of damages. *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). To recover damages after securing a default judgment, a plaintiff must prove the relief it seeks through testimony or written affidavit. *Bd. of Trs. of the Boilermaker Vacation Trust v. Skelly, Inc.*, 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005); *see Pepsico, Inc.*, 238 F. Supp. 2d at 1175 (citing *Televideo Sys., Inc.*, 826 F.2d at 917-18).

A party aggrieved under § 605 may, at its discretion, recover either actual or statutory damages. 47 U.S.C. § 605(e)(3)(C). Here, Plaintiff elects to recover statutory damages, and requests statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II). (Mot. at 8.) The amount of statutory damages to which Plaintiff is entitled for each violation of this section shall be not less than $1,000.00 nor more than $10,000.00. *Id.* Additionally, Plaintiff requests enhanced damages pursuant to section 605(e)(3)(C)(ii), which permits the court, in its discretion, to award up to $100,000.00 in additional damages when "the violation was committed willfully and for the purposes of direct or indirect commercial advantage or private financial gain . . . ." (Mot. at 7.) In making this motion, Plaintiff requests $5,400 in statutory damages and $27,000 in enhanced statutory damages, for a total award of $32,400. *Id.* Plaintiff contends that these awards satisfy the dual purposes of compensating Plaintiff and acting as a deterrent against future acts of piracy by both this Defendant and others, and also takes into account that Defendant is a repeat offender. *Id.*

**A. Congress Considers Piracy To Be Theft And The Statutes Contemplate Both Specific And General Deterrence.**

Congress has equated a violation of the piracy statutes to theft, which

> deprives the cable industry of millions of dollars of revenue each year which it should otherwise be receiving. The Committee believes that theft of cable service poses a major threat to the economic viability of cable operators and cable programmers, and creates unfair burdens on cable subscribers who are forced to subsidize the benefits that other individuals are getting by receiving cable service without paying for it.

Cable Communications Policy Act of 1984, House Report No. 98-934, 5 U.S. Cong. News. '84 Bd. Vol. -6, 4655, 4720 (emphasis added). Plaintiff requests that the Court take the purpose of the

legislation into account and recognize that an "award of modest damages does not satisfy the purpose of the legislation." *J & J Sports Prods., Inc. v. Brazilian Paradise, LLC*, 789 F.Supp.2d 669, 676-77 (D.S.C. 2011). Additionally, a primary goal of piracy awards is deterrence and the piracy statutes contemplate both specific and general deterrence. *Joe Hand Promotions, Inc. v. Gamino*, 2011 WL 66144, *4 (E.D.Cal. Jan. 10, 2011) ("the amount of damages awarded should be in an amount that is adequate to deter these Defendants and others from committing similar acts in the future.")

### B. Statutory Damages Under 47 U.S.C. § 605(e)(3)(C)(i)(II) And Enhanced Statutory Damages Under 47 U.S.C. § 605(e)(3)(C)(ii).

The Ninth Circuit has not established a formula for calculating damages under 47 U.S.C. § 605, so the district court retains significant discretion in awarding damages. While some courts have looked to the licensing fee to determine an appropriate statutory damages award, Plaintiff argues that this method undervalues the Program and fails to adequately compensate Plaintiff. *See Kingvision Pay-Per-View, Ltd. v. Jasper Grocery*, 152 F. Supp. 438, 442 (S.D.N.Y. 2001) ("a damage award based exclusively on licensing fees would undercompensate the plaintiff because the availability of unauthorized access to the program reduces demand and depresses the prices that [plaintiff] can charge for sublicenses."); *see Joe Hand Promotions, Inc. v. Sheedy*, 2011 WL 4089534, *3 (D.S.C. July 29, 2011) (awarding five times the licensing fee as statutory damages).

In addition, a statutory award based on actual losses ignores the fact that statutory damages may be awarded as an alternative to actual damages. *See* 47 U.S.C. § 605(e)(3)(C)(i). The purpose of awarding statutory damages is that actual damages are often difficult to prove. *See Lauretex Textile Corp. v. Allton Knitting Mills, Inc.*, 519 F.Supp. 730, 732 (S.D.N.Y. 1981). In the copyright context, the Supreme Court opined that statutory damages may be preferable, because to simply award actual damages would not deter wrongful conduct. In *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233 (1952). Indeed, in the current situation, if the infringing party was only awarded actual damaging, he would be encouraged to unlawfully exhibit the Program, because the odds of being caught are low. Thus, the Court agrees that an award of statutory damages based on a presumed actual loss (the commercial licensing fee) negates the

10

purpose of having two separate types of damages available and would not serve to deter Defendants and others from unlawfully exhibiting pay-per-view programs.

### i. Calculation of the Statutory Damages Award

The Program carried a commercial licensing fee of $1,800. (Gagliardi Decl. ¶ 8.) As a result, Plaintiff requests $5,400 in statutory damages, which is three times the commercial licensing fee. *See Sheedy,* 2011 WL 4089534 at *3 (awarding five times the licensing fee as statutory damages).

On September 17, 2016, investigator Poblete observed the unlawful exhibition of the Program at La Selva Taqueria. (Poblete Decl. at 1.) Mr. Poblete observed the undercard bout between William Monroe, Jr. and Gabriel Rosado, which was part of the Program. (Gagliardi Decl. ¶ 7.) The Program was displayed on two televisions, including a 70+" projection screen, and there were between 28-34 patrons present. (Poblete Decl. at 2.)

Given Defendant's status as a repeat offender, the undersigned recommends that the three times multiplier suggested by Plaintiff be used, such that $5,400.00 in statutory be damages be awarded. *See J & J Sports Prods., Inc. v. Tonita Restaurant, LLC*, 2015 WL 9462975, *5, n.8 (E.D.Ky. Dec. 28, 2015) ("a treble award, as Plaintiff suggests, [is] appropriate here. Unlawful access must cost a violator more than face ticket price").

### ii. Plaintiff should also be awarded enhanced statutory damages.

At least two piracy judgments have been entered against Defendant. *See J&J Sports Prods., Inc. v. Sergura*, No. C 12-01702 JSW, 2014 WL 1618577 (N.D. Cal. Apr. 21, 2014)($4,800 in damages). Most recently, on April 17, 2015, and Plaintiff was awarded $3,000 in statutory damages, $6,000 in enhanced damages, and $2,200 in conversion damages, for a total of $11,200. Order Adopting R. & R. Granting in Part and Den. in Part Mot. for Default J., *J & J Sports Prods., Inc. v. Segura*, Case No. 14-cv-03954-JSW (N.D. Cal. April 17, 2015), ECF No. 22; Judgment, Case No. 14-cv-03954-JSW (N.D. Cal. April 17, 2015), ECF No. 23. Both judgments were entered prior to the date of the broadcast at issue, such that there is no question that Defendant was on notice of the unlawful nature of his behavior.

In light of Defendant's affirmative misconduct, repeat offender status, and in order to deter

future willful violations, the Court recommends Plaintiff be awarded enhanced damages.

Plaintiff contends that Defendant acted willfully and for the purpose of financial gain, such that enhanced statutory damages are appropriate. (Mot. at 12.) Enhanced statutory damages may be awarded when "the violation was committed willfully and for purposes of commercial advantage or private financial gain[.]" 47 U.S.C. § 605(e)(3)(C)(ii). First, there is evidence of a prior violation, and a prior violation is a hallmark consideration of enhanced statutory damages. *See G & G Closed Circuit Events, LLC v. Saddeldin,* 2010 WL 3036455, at *4 (E.D.Cal. Aug. 2, 2010)(court recommended $30,000 in enhanced statutory damages be awarded against a repeat offender).

Moreover, Plaintiff argues that the broadcast of the pirated material acts as a draw for customers, such that willfulness and the purpose of commercial advantage is established. (Mot. at 12.) Plaintiff cites to *Ellison v. Robertson*, 357 F.3d 1072 (9th Cir. 2004), which, while addressing a different legal issue, is instructive. *Id.* at 12-13. In *Ellison*, the Ninth Circuit held that the draw for customers need not be substantial to satisfy the financial benefit element for vicarious liability. 357 F.3d at 1078-79; *see also Joe Hand Promotions, Inc. v. Wing Spot Chicken & Waffles, Inc.*, 920 F. Supp. 2d 659, 668-69 (E.D. Va. 2013)(Defendant's showing of the exhibition on all of its televisions to approximately forty patrons at no cost was sufficient to find that the defendant acted willfully for commercial advantage and private financial gain). District courts have found that as few as eight persons present constituted a draw sufficient to award the maximum statutory damages of $10,000, and an enhanced damages award of $20,000. *J & J Sports Prods., Inc. v. Tilakamonkul*, 2011 WL 2414550, at *3, 5 (E.D. Cal. June 10, 2011), adopted, Order Adopting Findings and Recommendations in Full, *J & J Sports Prods., Inc. v. Tilakamonkul* 1:10-cv-01705-AWI-GSA (Jul. 1, 2011), ECF No. 21.

Here, there were 28-34 patrons at the establishment compared to eight patrons in *Tilakamonkul,* and the Program was shown on two televisions, as opposed to one in *Tilakamonkul.* (Mot. at 14.) Additionally, unlike in *Tilakamonkul*, there are at least two prior judgment against Defendant for the same unlawful activity.

Since Mr. Riley opted to send an attorney who was not knowledgeable in his stead,

Plaintiff was unable to explain why $27,000 in enhanced statutory damages was appropriate. Absent the benefit of such an explanation, the undersigned finds that, while Defendant is a repeat offender who was apparently undeterred by the most recent judgment of $11,200, the $27,000 sought by Plaintiff is excessive. Instead, the undersigned recommends that the enhanced damages award be reduced to $12,000, which represents twice the amount of enhanced damages awarded in 2015. *See* Order Adopting R. & R. Granting in Part and Den. in Part Mot. for Default J., *J & J Sports Prods., Inc. v. Segura*, Case No. 14-cv-03954-JSW (N.D. Cal. April 17, 2015), ECF No. 22 at 1.

### C. Plaintiff is entitled to damages for conversion,

Damages for conversion are based on the value of the property at the time of the conversion. Cal. Civ. Code § 3336. Plaintiff requests $1,800 in conversion damages, which is the amount Defendant would have paid to broadcast the Program lawfully. (Mot. at 14-15; Gagliardi Decl. ¶ 8.) The Court may award conversion damages in addition to statutory damages, and courts in this district have done so, including against Defendant Segura. *See also J & J Sports Prods., Inc. v. Paolilli*, 2011 WL 6211905, *4 (E.D. Cal., Dec. 14, 2011). Thus, the undersigned recommends that Plaintiff be awarded $1,800 in damages for conversion.

### D. Plaintiff is entitled to costs and reasonable attorneys' fees.

47 U.S.C. § 605 mandates an award of costs and attorneys' fees to an aggrieved party. Specifically, the section states that the court, "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii) (emphasis added). "[T]he term 'any person aggrieved' shall include any person with proprietary rights in the intercepted communication by wire or radio[.]" 47 U.S.C. § 605(d)(6). Here, Plaintiff had the exclusive nationwide distribution rights to the Program, rendering it a "person aggrieved" within the meaning of 47 U.S.C. § 605.

In its supplemental brief, Plaintiff seeks $4,609.00 in attorneys' fees and $1,329.23 in costs. (Dkt. No. 28 at 5.)

#### i. Attorneys' Fees

The lodestar is the presumptive method for calculating attorneys' fees under federal

1  statutes. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Intel Corp. v. Terabyte Intern., Inc.*,
2  6 F.3d 614, 622 (9th Cir. 1993). The lodestar calculates the number of hours reasonably spent on a
3  project multiplied by a reasonable rate. *Hensley*, 461 U.S. at 433. The lodestar method has
4  specifically been applied in calculating attorneys' fees under 47 U.S.C. § 605. *See Directv, Inc. v.*
5  *Atwal*, 2005 WL 1388649 (E.D.Cal. June 8, 2005).

Plaintiff seeks to recover $4,609.00 in attorneys' fees, which comprises 10.1 hours of attorney time, billed at rates of $300.00 and $500.00 per hour; and 9.59 hours at $100 per hour for administrative assistant time. (Decl. of Thomas P. Riley Regarding Attorneys' Fees and Costs, "Riley Fees Decl.," Dkt. No. 28-1, Ex. 1.)

Thomas P. Riley has been practicing law for more than 25 years. (Riley Fees Decl. ¶ 3.) His firm specializes in the civil prosecution of commercial signal piracy claims on behalf of promotors and closed-circuit distributers of major televised sporting events, and has done so since 1994. (Riley Fees Decl. ¶ 4.) Mr. Riley's billing rate is $500.00 per hour, and he billed a total of 3.1 hours, for a total of $1,550.00. (Riley Fees Decl. ¶ 5, Ex. 1.) The Court notes that, in 2011, Mr. Riley's billing rate of $450.00 per hour was found to be reasonable. *See Joe Hand Promotions, Inc. v. Piacente*, 2011 WL 2111467, *8 (N.D.Cal. April 11, 2011); *Joe Hand Promotions, Inc. v. Piacente,* 10-cv-03429-CW (N.D. Cal., Feb. 24, 2011), ECF No. 22 ($450.00 hourly billing rate). Thus, the Court finds that the hourly rate requested is reasonable and that the number of hours counsel spent litigating this action is reasonable

Plaintiff failed to provide information to substantiate the billing rates for the firm's research attorney, who billed at $300.00 per hour, and the administrative assistant, who billed at $100.00 per hour. This was after Plaintiff was given the opportunity to file a supplemental brief, because the request for attorneys' fees and costs was not included in the motion for default judgment. (*See* Dkt. No. 25.) Even then, Plaintiff did not timely file the supplemental brief, and the undersigned issued an order to show cause before the supplemental brief was filed. (*See* Dkt. No. 26.) Furthermore, Mr. Riley did not appear at the hearing, so the Court is even more disinclined to permit additional supplemental briefing in support of Plaintiff's motion for attorney's fees and costs. Thus, the Court recommends that the district court decline to award fees

14

1 for the unsubstantiated work performed.

2 Accordingly, the undersigned recommends that Plaintiff be awarded $1,550.00 in attorneys' fees.

#### ii. Costs

Under Civil Local Rule 54-3, an award of costs may include the clerk's filing fee and fees for service of process "to the extent reasonably required and actually incurred." Plaintiff has submitted evidence that counsel incurred $525.00 in investigative costs incurred in this matter prior to the initiation of the action, $400.00 in filing fees, $140.00 to serve Defendant with the complaint, $94.32 in courier fees, and $170.00 to serve Defendant with what appears to have been the motion for default judgment. (Riley Fees Decl., Ex. 1.)

Plaintiff argues that it is entitled to recover investigative costs, and cites *J & J Sports Prods., Inc. v. Mosley*, in which a court in this district awarded pre-filing investigative costs. 2011 WL 2066713, *7 (N.D. Cal. Apr. 13, 2011). The undersigned agrees. Notwithstanding, the undersigned declines to recommend that Plaintiff recover the $170.00 spent in connection with whatever documents were served on March 1, 2018, because, while Plaintiff was ordered to serve Defendant with a copy of the undersigned's February 20, 2018, that could have been accomplished by U.S. Mail, which would have been far less costly. (*See* Dkt. No. 25 at 2.)

Accordingly, the $600.00 in investigative costs, $400.00 in court filing fees and $140.00 for service of the complaint, and $94.32 in courier fees, totaling $1,159.23, are allowable and the undersigned recommends that they be awarded.

### V. CONCLUSION

In light of the foregoing, the undersigned RECOMMENDS that Plaintiff's motion for default judgement be GRANTED. Specifically, the Court RECOMMENDS that judgment be entered in the amount of $21,909.23 against Defendant as follows:

a. For the Violation of Title 47 U.S.C. § 605(e)(3)(C)(i)(II): $5,400.00;

b. For the Violation of Title 47 U.S.C. § 605(e)(3)(C)(ii): $12,000.00 ;

c. For the Tort of Conversion: $1,800.00;

d. Attorneys' Fees: $1,550.00

e. Costs: $1,159.23

Any party may file objections to this report and recommendation with the district judge within 14 days of being served with a copy. *See* 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b); N.D. Civil L.R. 72-3. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *IBEW Local 595 Trust Funds v. ACS Controls Corp.*, No. C-10-5568, 2011 WL 1496056, at *3 (N.D. Cal. Apr. 20, 2011).

Plaintiff shall serve a copy of this report and recommendation on Defendant by U.S. Mail and file a certificate of service.

IT IS SO RECOMMENDED.

## ORDER DISCHARGING ORDER TO SHOW CAUSE

On March 6, 2018, the undersigned issued an order to show to Plaintiff why the motion should not be denied based on Plaintiff's failure to comply with the Court's February 20, 2018 order, and ordered Plaintiff to file any supplemental briefing and supporting declaration(s) pertaining to its request for attorneys' fees and costs. (Dkt. No. 26 at 1.) On March 16, 2018, Plaintiff timely filed all documents as ordered. Accordingly, the March 6, 2018 order to show cause is DISCHARGED.

IT IS SO ORDERED.

Dated: April 19, 2018

KANDIS A. WESTMORE
United States Magistrate Judge